UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:14-CR228 RNC |
| | : | |
| v. | : | |
| | : | |
| RYAN GEDDES, | : | 18 U.S.C. § 1349 (Bank Fraud Conspiracy) |
| JASON CALABRESE, | : | 18 U.S.C. § 371 (Obstruction of Justice |
| RICHARD GEDDES, and | : | Conspiracy) |
| DUSTIN WHITTEN | : | 18 U.S.C. § 1349 (Mail and Wire Fraud |
| | : | Conspiracy) |
| | : | 18 U.S.C. § 371 (Bankruptcy Fraud |
| | : | Conspiracy) |
| | : | 18 U.S.C. § 152 (Bankruptcy False |
| | : | Statements) |
| | : | 18 U.S.C. ~~U.S.C.~~ § 982(a)(2) (Forfeiture) |
| | : | 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. |
| | : | § 2461(c) (Forfeiture) |

I N D I C T M E N T

The Grand Jury charges:

PRELIMINARY BACKGROUND

At all relevant times herein:

1.      The defendant RYAN GEDDES was a resident of Connecticut and the owner of

at least two construction/paving companies known as Elite LLC and Elite Paving and Excavating

LLC, and of several entities including United Development Group LLC, Donahue Mountain

Farm LLC, and Forest Properties LLC.

2.      The defendant JASON CALABRESE was a mortgage broker based in Waterbury,

Connecticut.

3.     The defendant DUSTIN WHITTEN was a resident of Connecticut and an associate of RYAN GEDDES.

4.     The defendant RICHARD GEDDES was a resident of Connecticut and the brother of RYAN GEDDES.

5.     Thomas Provenzano ("Provenzano"), who has been charged separately, was a resident of Connecticut and an associate of RYAN GEDDES.

6.     As of 2005, RYAN GEDDES had incurred several debts, including one business debt in excess of $490,000; and from 2005 to the present, RYAN GEDDES, assisted by JASON CALABRESE, RICHARD GEDDES, DUSTIN WHITTEN, and others known and unknown to the Grand Jury, commenced a series of schemes intended to hide his assets from creditors, obtain money by false and fraudulent pretenses from others, and obstruct and impede the successful investigation of the schemes.

COUNT ONE
(Conspiracy to Commit Bank Fraud)

7.     The allegations set forth in paragraphs 1 through 6 are incorporated herein by reference.

8.     As of November 2006, World Savings Bank FSB was a financial institution as defined in 18 U.S.C. § 20, the deposits of which were insured by the Federal Deposit Insurance Corporation (the "FDIC"), an agency of the United States Government established to protect depositors by insuring deposit accounts in financial institutions.   World Savings Bank FSB was subsequently acquired by Wachovia Bank, which was subsequently acquired by Wells Fargo Bank.

The Conspiracy

9.     From before November 2006 through November 2007, in the District of Connecticut and elsewhere, the defendants RYAN GEDDES and JASON CALABRESE, along with Provenzano (the "Conspirators"), did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other knowingly and willfully to execute and attempt to execute a scheme and artifice to defraud a federally insured bank and to obtain the proceeds of loan funds issued by that bank, by means of material false and fraudulent pretenses, representations, and promises, as more fully set forth below, in violation of 18 U.S.C. § 1344.

The Purpose of the Conspiracy

10.     The purpose of the conspiracy was to obtain and refinance by means of false loan applications, a series of three mortgage loans, one of which enabled a straw sale of real property from RYAN GEDDES to Provenzano, which mortgage and sale served to shield RYAN GEDDES's assets from creditors, pay off encumbrances on the real property, and provide cash to the Conspirators.

Manner and Means of the Conspiracy

The manner and means by which the Conspirators sought to accomplish the objects of the conspiracy included the following:

11.     It was a part of the conspiracy that, in or about November 2005, the Conspirators agreed to structure a transaction in which Provenzano would purchase a residential property effectively owned by RYAN GEDDES (the "subject property") and Provenzano would obtain mortgage financing for the transaction, despite Provenzano's lack of funds and income to pay off the mortgage.

- 3 -

12.     It was a part of the conspiracy that, in or about November 2005, the Conspirators created and caused to be created, a mortgage loan application that falsely portrayed Provenzano as a highly-paid executive at a company owned by RYAN GEDDES, earning an income sufficient to qualify for a large mortgage.

13.     It was a part of the conspiracy that, in or about November 2005, a closing was held on RYAN GEDDES's sale of the subject property to Provenzano, in which the proceeds of the new mortgage loan paid off several liens and a prior mortgage on the subject property, financed a broker's fee for JASON CALABRESE, and provided a large cash payout for RYAN GEDDES, some of which he shared with Provenzano.

14.     It was a part of the conspiracy that, in or about November 2006, RYAN GEDDES, JASON CALABRESE, and Provenzano created and caused to be created, a mortgage refinancing loan application that falsely portrayed Provenzano as a highly-paid executive at a company owned by RYAN GEDDES, earning an income sufficient to qualify for a large mortgage.

15.     It was a part of the conspiracy that, in or about November 2006, a federally-insured bank issued a mortgage refinancing loan to Provenzano for the subject property, based on the false and fraudulent representations described above; the proceeds of this refinancing loan paid off the prior, fraudulently-obtained November 2005 mortgage loan obtained in November 2005, and financed a broker's fee for JASON CALABRESE.

16.     It was a part of the conspiracy that, in or about July 2007, the Conspirators arranged another mortgage refinancing with respect to a residential property owned and occupied by Provenzano, by means of a mortgage refinancing loan application that falsely portrayed

Provenzano as a highly-paid executive at a company owned by RYAN GEDDES, earning an income sufficient to qualify for a large mortgage.

17.    It was a part of the conspiracy that, in or about July 2007, a federally-insured bank issued a mortgage refinancing loan to Provenzano for the residential property that he owned and occupied, based on the false and fraudulent representations described above.

Overt Acts

18.    In furtherance of the conspiracy, and to accomplish its purposes and objects, the Conspirators committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.    In or about November 2006, RYAN GEDDES, JASON CALABRESE, and Provenzano prepared a mortgage loan refinancing application on behalf of Provenzano for a property located at 27 Palmer Road, Morris, Connecticut (the "27 Palmer Road" property), effectively owned by RYAN GEDDES despite having been previously sold to Provenzano by United Development Group LLC ("UDG"), an entity controlled by RYAN GEDDES.   The mortgage application and accompanying documents falsely represented that Provenzano was and had been for five years the Operations Manager for "Elite," which is an abbreviated name of RYAN GEDDES's two construction/paving companies, Elite LLC and Elite Paving and Excavating LLC.   The documents also falsely represented that Elite paid Provenzano $28,000 per month, equal to $336,000 per year.   In fact, Provenzano was not employed by "Elite," Elite LLC, or Elite Paving and Excavating LLC, and in 2005 and 2006, Provenzano earned less than $50,000 per year.

b.    In or about November 2006, a company owned and controlled by RYAN GEDDES provided verification for the above-described, false employment and income

representations about Provenzano that were listed in the loan refinancing application documents for the 27 Palmer Road property.

   c. In or about July 2007, JASON CALABRESE and Provenzano prepared a mortgage loan refinancing application on behalf of Provenzano for a property located at 669 Goshen Road, Torrington, Connecticut, owned and occupied by Provenzano (the "669 Goshen Road property"). The mortgage application and accompanying documents falsely represented that Provenzano was and had been for five years the Operations Manager for "Elite." The documents also falsely represented that Elite paid Provenzano $25,000 per month, equal to $300,000 per year. In fact, Provenzano was not employed by "Elite," Elite LLC, or Elite Paving and Excavating LLC, and in 2005, 2006, and 2007, Provenzano earned less than $50,000 per year.

   d. In or about July 2007, a company owned and controlled by RYAN GEDDES provided verification for the above-described, false employment and income representations about Provenzano that were listed in the loan refinancing application documents for the 669 Goshen Road property.

  19. In or about November 2006, as a result of the above-described false representations in the mortgage loan refinancing application documents for the 27 Palmer Road property, World Savings Bank FSB issued a mortgage refinancing loan to Provenzano in the amount of $936,000.

  20. In or about July 2007, as a result of the above-described false representations in the mortgage loan refinancing application documents for the 669 Goshen Road property, World Savings Bank FSB issued a mortgage refinancing loan to Provenzano for in the amount of $324,000.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
(Conspiracy to Obstruct Justice)

21.     The allegations set forth in paragraphs 1 through 20 are incorporated herein by reference.

22.     In May and June of 2010, the Federal Bureau of Investigation ("FBI") and Internal Revenue Service – Criminal Investigation ("IRS-CI") were conducting an investigation of suspected, fraudulent mortgage transactions, including the activity described in Count One.

23.     In or about May and June of 2010, RYAN GEDDES and Provenzano became aware that the FBI and IRS-CI were investigating the sale and financing of the November 2005 straw sale of the 27 Palmer Road property, including a $249,923.12 cash down payment that, according to the HUD-1 settlement statement, Provenzano had been obligated to pay at the closing, but had never paid.

### The Conspiracy to Obstruct Justice

24.     In May and June of 2010, in the District of Connecticut and elsewhere, the defendant RYAN GEDDES and Provenzano (the "Conspirators") did unlawfully, knowingly, and intentionally conspire, combine, confederate and agree with each other to commit an offense against the United States, that is, to obstruct justice by falsifying records, and engaged in various overt acts in furtherance of the conspiracy, as more fully set forth below, in violation of 18 U.S.C. § 1519.

## The Purpose of the Conspiracy

25.     The purpose of the conspiracy was to impede and obstruct an ongoing federal investigation of bank fraud concerning the November 2005 financing and straw sale of the 27 Palmer Road property to Provenzano, and the 2006 refinancing of the November 2005 mortgage loan, by creating the false appearance that in November 2005, the Conspirators had made timely arrangements for the conveyance of Provenzano's approximately $249,000 down payment due and owing at the real estate closing, when in fact, neither a cash payment nor any other arrangements for making the down payment had been made in 2005, and when in fact, the terms of the mortgage loan prohibited any non-cash financing of the down payment.

## Manner and Means of the Conspiracy

The manner and means by which the Conspirators sought to accomplish the objects of the conspiracy included the following:

26.     It was a part of the conspiracy that RYAN GEDDES and Provenzano created a false, backdated Promissory Note regarding the cash down payment due and owing but never paid at the November 2005 closing on the straw sale of the 27 Palmer Road property to Provenzano.

27.     It was a part of the conspiracy that Provenzano conveyed a copy of the false Promissory Note to federal agents who were investigating the straw sale of the 27 Palmer Road property to Provenzano and its subsequent refinancing.

## Overt Acts

28.     In furtherance of the conspiracy, and to accomplish its purposes and objects, the Conspirators committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.   In or about May of 2010, RYAN GEDDES and Provenzano drafted a Promissory Note in the approximate amount of $249,000, back-dated to November 29, 2005, which was on or about the date of the November 2005 closing on the straw sale of the 27 Palmer Road property.

b.   On or about May 13, 2010, with RYAN GEDDES giving instructions over the telephone, Provenzano signed the false Promissory Note and had it co-signed by a witness.

c.   On or about June 11, 2010, Provenzano told federal agents in an interview, that at the time of the November 2005 straw sale of the 27 Palmer Road property, the down payment due and owing had been financed by a Promissory Note.

d.   On or about June 23, 2010, Provenzano met with and gave to agents of the FBI and IRS-CI the false Promissory Note that had been back-dated to November 29, 2005, and falsely stated that the Promissory Note was among the documents prepared and incorporated in the closing on the November 2005 straw sale of the 27 Palmer Road property.

All in violation of 18 U.S.C. § 371.

COUNT THREE
(Conspiracy to Commit Mail and Wire Fraud)

29.   The allegations set forth in paragraphs 1 through 6 are incorporated herein by reference.

The Conspiracy

30.   From in or about December 2009, and continuing to the present, in the District of Connecticut and elsewhere, the defendant RYAN GEDDES and Provenzano (the "Conspirators") did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other knowingly and willfully to execute and attempt to execute a scheme

and artifice to defraud a title insurance company and several creditors by transferring certain real property to a straw owner, obtaining title insurance on the property in the name of the straw owner, and creating an insurable event regarding the title, all by means of material false and fraudulent pretenses, representations, and promises, as more fully set forth below.

### The Purpose of the Conspiracy

31.     The purpose of the conspiracy was to obtain and shield from RYAN GEDDES's creditors cash payouts from a title insurance company by preparing a defective title search on certain real property that omitted to list some of the outstanding liens, conducting a sale of the real property to a straw buyer/owner, obtaining title insurance based on the defective title search, and thereafter causing an event to trigger a new title search, resulting in discovery of the omitted liens, the lodging of a title insurance claim, and a payout to the straw owner from the title insurer for the omitted liens.

### Manner and Means of the Conspiracy

The manner and means by which the Conspirators sought to accomplish the objects of the conspiracy included the following:

32.     It was a part of the conspiracy that Provenzano described to RYAN GEDDES how a scheme to defraud a title insurance company could be conducted.

33.     It was a part of the conspiracy that Provenzano assisted in conducting a title search on a real property effectively owned by RYAN GEDDES (the "subject property") so that RYAN GEDDES could select which liens and encumbrances could be omitted from the title search document that would be submitted with a title insurance application.

34.    It was a part of the conspiracy that RYAN GEDDES personally selected liens and encumbrances to be omitted from the title search document that would be submitted with a title insurance application.

35.    It was a part of the conspiracy that RYAN GEDDES, who owned and occupied the subject property, arranged a straw sale of the subject property from the straw owner, DUSTIN WHITTEN, to a straw buyer, RICHARD GEDDES.

36.    It was a part of the conspiracy that RYAN GEDDES arranged to submit a title insurance application with a title search document that falsely omitted some of the liens and encumbrances on the subject property.

37.    It was a part of the conspiracy that an insurance company issued a title insurance policy in the name of RICHARD GEDDES, based upon the title search report that falsely omitted some of the liens and encumbrances on the property.

38.    It was a part of the conspiracy that the Conspirators intended to cause a triggering event for a new title search on the property, which would result in discovery of the omitted liens and encumbrances, the lodging of a title insurance claim, and a payout by the title insurer, which claim and payout would involve interstate mail and wire communications.

### Overt Acts

39.    In furtherance of the conspiracy, and to accomplish its purposes and objects, the Conspirators committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.    In or about December 2009, Provenzano and RYAN GEDDES discussed a scheme to obtain real estate title insurance based on a title search that would falsely omit certain liens and encumbrances against the real estate effectively owned by GEDDES.

b.      In or about December 2009 and January 2010, RYAN GEDDES and Provenzano agreed that: (i) title insurance would be obtained on 66 Donahue Road Extension in Litchfield, Connecticut (the "66 Donahue Road property"), which RYAN GEDDES effectively owned and occupied; (ii) a defective title search would be prepared for the title insurance application, omitting one or more liens on the property; (iii) the insurance would be issued as part of a straw sale of the 66 Donahue Road property; and (iv) a subsequent title search would reveal the omitted liens, resulting in a payout by the title insurance company.

c.      On or about January 13, 2010, during a discussion of the title insurance fraud scheme, RYAN GEDDES directed Provenzano and an individual referred to herein as Witness 1, whose identity is known to the Grand Jury, to conduct a title search on the 66 Donahue Road property.

d.      On or about January 15, 2010, Provenzano and Witness 1 conducted a title search on the 66 Donahue Road property.

e.      On or about February 26, 2010, RYAN GEDDES reviewed the title search conducted by Provenzano and Witness 1 and directed that five liens, totaling more than $990,000, be taken off the title search document by crossing off each of the following: an attachment/judgment lien of more than $490,000; a mortgage of more than $462,000; and three mechanics' liens totaling more than $39,000.

f.      On or about March 25, 2010, a closing was held on the sale of the 66 Donahue Road property from Donahue Mountain Farm, LLC to RICHARD GEDDES. DUSTIN WHITTEN signed for the seller as a member of Donahue Mountain Farm LLC.   After the closing, RYAN GEDDES continued to reside at and pay the mortgage on the 66 Donahue Mountain Road property.

g.     On or about March 29, 2010, a title insurance policy was issued to RICHARD GEDDES for the 66 Donahue Road property, based on the defective title search described above, on which the Conspirators had deliberately omitted liens and encumbrances totaling more than $990,000.

40.     The company that issued the title insurance, Lawyers Title Insurance Corp., processes all title insurance claims from its offices in Florida, so that the Conspirators' intended future insurance payout would be issued by means of either the mails or interstate wire transmissions.

All in violation of 18 U.S.C. § 1349.

COUNT FOUR
(Conspiracy to Commit Bankruptcy Fraud)

The Conspiracy

41.     Between in or about March 2010 and in or about August 2010, in the District of Connecticut and elsewhere, the defendants RYAN GEDDES and RICHARD GEDDES (the "Conspirators"), did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other knowingly and willfully to execute and attempt to execute a scheme and artifice to defraud RYAN GEDDES's creditors in bankruptcy by means of material false and fraudulent pretenses, representations, and promises, as more fully set forth below, in violation of 18 U.S.C. § 157.

The Purpose of the Conspiracy

42.     The purpose of the conspiracy was to hide from the Bankruptcy Court and RYAN GEDDES's creditors a residential property (the "subject property") effectively owned by RYAN GEDDES, by arranging a transfer of the property to a straw owner, and falsely omitting to

disclose the subject property on the asset schedules accompanying RYAN GEDDES's bankruptcy petition.

Manner and Means of the Conspiracy

The manner and means by which the Conspirators sought to accomplish the objects of the conspiracy included the following:

43.     It was a part of the conspiracy that, in or about March 2010, RICHARD GEDDES agreed to serve as a straw purchaser of the subject property for RYAN GEDDES.

44.     It was a part of the conspiracy that, in or about March 2010, RYAN GEDDES arranged a straw sale of the subject property from one of his business entities to RICAHRD GEDDES.

45.     It was a part of the conspiracy that, in or about May 2010, RYAN GEDDES filed and caused to be filed a bankruptcy petition, on which he falsely omitted to disclose the subject property on the Schedules of Assets and Liabilities and a Statement of Financial Affairs.

46.     It was a part of the conspiracy that, in or about August 2010, RYAN GEDDES filed and caused to be filed in his pending bankruptcy case, amended Schedules of Assets and Liabilities and a Statement of Financial Affairs, on which he fraudulently failed to disclose the subject property.

Overt Acts

47.     In furtherance of the conspiracy, and to accomplish its purposes and objects, the Conspirators committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.      On or about March 25, 2010, RYAN GEDDES and RICHARD GEDDES participated in a closing on the sale of 66 Donahue Road Extension in Litchfield, Connecticut

(the "66 Donahue Road property"), which RYAN GEDDES effectively owned and occupied. The 66 Donahue Road property was sold to RICHARD GEDDES from Donahue Mountain Farm, LLC, an entity effectively owned and controlled by RYAN GEDDES.   After the closing, RYAN GEDDES continued to reside at and pay the mortgage on the 66 Donahue Mountain Road property.

        b.      On or about May 5, 2010, RYAN GEDDES filed and caused to be filed a bankruptcy petition in the United States Bankruptcy Court for the District of Connecticut in a case under Title 11, *In re Ryan Geddes*, No. 10-51034, in which he fraudulently failed to disclose on his Schedules of Assets and Liabilities and Statement of Financial Affairs, that he owned the 66 Donahue Road property, in violation of 18 U.S.C. § 157.

        c.      On or about August 4, 2010, RYAN GEDDES filed and caused to be filed an Amended Schedules of Assets and Liabilities and a Statement of Financial Affairs in the United States Bankruptcy Court for the District of Connecticut in a case under Title 11, *In re Ryan Geddes*, No. 10-51034, in which he fraudulently failed to disclose that he owned the 66 Donahue Road property, in violation of 18 U.S.C. § 157.

.     All in violation of 18 U.S.C. § 371.

## COUNT FIVE
### (Bankruptcy False Statement)

      48.      On or about May 5, 2010, in the District of Connecticut, the defendant RYAN GEDDES knowingly and fraudulently made a material false declaration, certificate and verification under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, *In re Ryan Geddes*, No. 10-51034, by submitting Schedules of Assets and Liabilities and a Statement of Financial Affairs, in which RYAN GEDDES

- 15 -

fraudulently omitted to disclose the following two residential real properties that he owned: 66 Donahue Road Extension in Litchfield, Connecticut; and 154 Tamarack Drive, Old Forge, New York.

All in violation of 18 U.S.C. § 152(3).

## COUNT SIX
(Bankruptcy False Statement)

49.    On or about August 4, 2010, in the District of Connecticut, the defendant RYAN GEDDES knowingly and fraudulently made a material false declaration, certificate and verification under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, *In re Ryan Geddes*, No. 10-51034, by submitting Amended Schedules of Assets and Liabilities and a Statement of Financial Affairs, in which RYAN GEDDES fraudulently omitted to disclose the following two residential real properties that he owned: 66 Donahue Road Extension in Litchfield, Connecticut; and 154 Tamarack Drive, Old Forge, New York.

All in violation of 18 U.S.C. § 152(3).

## COUNT SEVEN
(Conspiracy to Commit Mail and Wire Fraud)

The allegations set forth in paragraphs 1 through 6 are incorporated herein by reference.

### The Conspiracy

50.    From in or about March 2011 and continuing to September 2011, in the District of Connecticut and elsewhere, RYAN GEDDES, DUSTIN WHITTEN, and others known and unknown to the Grand Jury (the "Conspirators") did unlawfully, knowingly, and intentionally conspire, combine, confederate, and agree with each other knowingly and willfully to execute and attempt to execute a scheme and artifice to defraud an insurance company and several

bankruptcy creditors, by obtaining and shielding from creditors cash payouts from the insurance company, which payouts were obtained by means of material false and fraudulent pretenses, representations, and promises, as more fully set forth below.

### The Purpose of the Conspiracy

51.     The purpose of the conspiracy was to obtain and shield from RYAN GEDDES's creditors cash payouts from an insurance company, by taking out a homeowner's insurance policy in the name of a straw owner of the residence, causing the residence to burn down, and filing a claim with the insurance company in the straw owner's name.

### Manner and Means of the Conspiracy

The manner and means by which the Conspirators sought to accomplish the objects of the conspiracy included the following:

52.     It was a part of the conspiracy that, after one of RYAN GEDDES's creditors commenced a debt collection lawsuit against RYAN GEDDES and his wife and associates, RYAN GEDDES arranged a straw transfer from his wife to DUSTIN WHITTEN, of an undeveloped parcel of real property that he effectively owned.

53.     It was a part of the conspiracy that, after RYAN GEDDES built and caused to be built and then occupied a residence on the parcel of real property, the Conspirators applied for and obtained a homeowner's insurance policy for the residence in the name of the straw owner, DUSTIN WHITTEN.

54.     It was a part of the conspiracy that the Conspirators arranged for a fire to be set inside the insured residence, and for the residence to burn down.

55.     It was a part of the conspiracy that the straw owner of the residence, DUSTIN WHITTEN, sought to and did apply for payouts on the homeowners' insurance policy after the fire.

### Overt Acts

56.     In furtherance of the conspiracy, and to accomplish its purposes and objects, the Conspirators committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a.     In or about May 2009, United Development Group LLC, an entity controlled and effectively owned by RYAN GEDDES, assigned the rights to the real property at 154 Tamarack Drive, Old Forge, New York (the "154 Tamarack Drive" property) to Inland Forest Properties LLC, another entity owned and effectively controlled by RYAN GEDDES, for which DUSTIN WHITTEN served as the entity's listed member and assignee.

b.     In or about March 2011, the Conspirators applied for and obtained a homeowners insurance policy in the name of DUSTIN WHITTEN for a residence that had been constructed at the 154 Tamarack Drive property, when in fact, the resident and true owner of the 154 Tamarack Drive property was RYAN GEDDES.

c.     On or about July 4, 2011, less than two weeks after a discussion in RYAN GEDDES's pending bankruptcy case, *In re Ryan Geddes*, No. 10-51034, about the possibility of selling the 154 Tamarack Drive property to help pay RYAN GEDDES's debts, the Conspirators deliberately caused a fire at and thereby destroyed the 154 Tamarack Drive property.

d.     In July and August 2011, DUSTIN WHITTEN communicated several times with a lender's representative regarding the outstanding mortgage on the 154 Tamarack Drive property, requesting information needed to lodge an insurance claim, and RYAN

GEDDES authorized the lender's representative to release such information to DUSTIN WHITTEN.

    e.   On or about September 21, 2011, representing himself as the owner of the 154 Tamarack Drive property, DUSTIN WHITTEN executed and thereafter submitted to the Erie & Niagara Insurance Association, two notarized homeowner's insurance claims in the respective amounts of $515,038.50 (for the structure) and $92,974.47 (for personal property), even though RYAN GEDDES was the true owner of the property.

  All in violation of 18 U.S.C. § 1349.

## FORFEITURE ALLEGATION
(Bank Fraud)

  57.  Upon conviction of the bank fraud conspiracy offense alleged in Count One of this Indictment, defendant RYAN GEDDES shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(2), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the offense in violation of 18 U.S.C. § 1349 affecting a financial institution, and all property traceable to such property.

  58.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 982 and Rule 32.2(a), Federal Rules of Criminal Procedure.

## FORFEITURE ALLEGATION
(Mail and Wire Fraud Conspiracy)

59.     Upon conviction of one or more of the mail and wire fraud conspiracy offenses alleged in Counts Three and Seven of this Indictment, defendant RYAN GEDDES shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1349.

60.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property that cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

All in accordance with 18 U.S.C. § 981(a)(1) as incorporated by 28 U.S.C. § 2461(c), and

Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

DEIRDRE M. DALY
UNITED STATES ATTORNEY

MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY

HENRY K. KOPEL
ASSISTANT UNITED STATES ATTORNEY