,UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:14CR228(JBA) |
| | : | |
| v. | : | |
| | : | |
| RYAN GEDDES | : | March 25, 2016 |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEOMRANDUM**
**REGARDING RESTITUTION VALUATION**

The United States of America respectfully files this supplemental memorandum, addressing the Court's inquiry from the sentencing hearing about methods of calculating restitution in a mortgage fraud/foreclosure case. The specific question was, how to determine an appropriate loss "offset" figure, that is, the sale value of the foreclosed property, which serves as an offset against the gross loss sustained by the lender for the uncollected mortgage loan. For the reasons explained below, and based on the pertinent legal authority, the government recommends that the provisionally-accepted restitution figure of $703,698.70 be retained as the final, ordered restitution figure.

**A.   Pertinent Factual Background**

In this case, there was one property that went into foreclosure as a result of the offense conduct, 27 Palmer Road, Morris, Connecticut. On behalf of the ultimate mortgage holder, Wells Fargo, the government represented at sentencing that the outstanding loan principal was $985,961.15, and the outstanding interest was $214,624.69, for a combined total mortgage loss of $1,200,585.84. The government further noted that Wells Fargo sustained an additional cost of $225,693.39 to acquire and maintain the property prior to sale; but not being certain whether the

law defines this as part of the gross loss figure, the government in an abundance of caution did not include it.

At the earlier sentencing of co-defendants Jason Calabrese, at which time no arms-length market sale had yet occurred, the parties relied on a February 2015 state foreclosure court estimate of $800,000 as the fair market value of the property.  Deducting this from the gross mortgage loss – without counting in that loss total, the acquisition and repair costs – would have yielded a restitution figure of $400,585.84.  However, within the week before sentencing, Wells Fargo advised that the property finally had been sold in an arms-length, market sale, for $496,887.14.  Using this figure as the offset amount – and again, not counting the acquisition and repair costs as part of the gross loss total – yielded a restitution loss figure of $703,698.70.

The defense objected that the arms-length, market sale figure was too low, and hence that the proposed restitution figure was too high.  The defense offered three contrasting figures to determine a fair market value for the loss offset: (1) the state foreclosure proceeding's $800,000 figure from February 2015; (2) a Zillow.com listing of $925,014; and (3) a real estate broker's figure, based on an alleged, average price per square foot calculation, totaling $1,098,469.

In response, the government acknowledged that given the several inconsistent data points, there may be a basis to revise upward somewhat, the actual foreclosure sale figure; but the government also noted, since the latter derived from an arms-length, market sale, any such revision should at most be a compromise between that actual sale figure and the defense's proposed valuations.  The Court provisionally accepted the Wells Fargo sale figure, and hence the government's initial, proposed restitution amount of $703,698.70, while inviting briefing on the pertinent law for further consideration.

A. **Pertinent Legal Authority**

The case law interpreting the victim restitution statutes in the mortgage fraud context calls for the Court to "exercise [its] discretion . . . in determining the measure of value appropriate to [the] restitution calculation in a given case," mindful that the goal is to compensate "the full amount of each victim's losses . . . ."  United States v. Boccagna, 450 F.3d 107, 114 (2d Cir. 2006).  In Boccagna, the victim being compensated was the U.S. Department of Housing and Urban Development, or "HUD."  After HUD recovered the foreclosed properties, it transferred their title to a city development agency at nominal sale prices, that is, below their likely open market sale values.  450 F.3d at 108.  The district court used the sum of those nominal sale values as the loss offset figure; the defendant objected that this understated the appropriate offset figure and hence overstated the restitution loss.  The Second Circuit agreed, and remanded the case to the district court, "for it to determine the fair market value of the foreclosure properties at the time HUD acquired title and to offset that amount against the . . . loss sustained in this case." 450 F.3d 120.

In reaching this decision the Court of Appeals observed that the pertinent section of the victim restitution statute, 18 U.S.C. § 3663A(b)(1)(B)(ii), "is silent . . . on the question of how the referenced property is to be valued," and that "the law recognizes a number of reasonable measures of property value . . . ."  450 F.3d 114-15.  Accordingly, "we construe 'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose . . . ."

The Court outlined a hierarchy of valuation methods, starting with the fair market value that most closely approximates an open market, arms-length transaction:

> In most circumstances, fair market value will be the measure most apt to serve this statutory purpose. ''Fair market value'' is defined as the ''price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction.''

450 F.3d 115.  The Court then described circumstances where other valuation methods may be more accurate, for instance:

> when the ''actual cash value'' of . . . damaged, lost, or destroyed property ''is difficult to ascertain – because an item is unique, or because there is not a broad and active market for it,'' [in which case] ''replacement cost'' rather than fair market value may better compensate a victim for the full amount of his loss.

450 F.3d 116.  The Court emphasized that the use of measures other than fair market value is called for only where such "other measures of value may . . . provide a more accurate measure of the 'full amount' of a victim's loss."   450 F.3d 117.

The Court of Appeals further held that, just as the offset loss must be calculated to avoid overstating the victim's net loss, care must be taken to avoid understating the victim's gross loss from which the offset figure will be subtracted.   In this regard, the Court of Appeals ruled that the initial, gross loss figure should include not just the unpaid mortgage amount, but also "such consequential losses as 'interest on the loans, maintenance fees, taxes, *and selling expenses*.'"  450 F.3d 120 (emphasis added).   The Court reasoned that the defendant "can hardly claim an offset credit based on the fair market value of these recouped properties without also factoring [the victim]'s costs in that calculation."   450 F.3d 121.

**C.  <u>Recommendations</u>**

Taken together, <u>Boccagna</u> 's two holdings about the offset figure and the total, gross loss figure argue for either retaining or increasing the $703,698.70 restitution loss figure that the government recommended and the Court provisionally accepted.

First, given the existence of an offset figure from an arms-length, market transaction, <u>Boccagna</u> would recommend using that figure for determining the property's fair market value. The government acknowledges, however that <u>Boccagna</u> leaves within the Court's discretion, the option to revise the sale figure upward, if the Court is persuaded that the sale did not yield full market value.

But second, <u>Boccagna</u> also directs the Court to include in the initial, gross loss figure, the $225,693.39 incurred by Wells Fargo to acquire and prepare the property for sale.  In short, even if the Court were persuaded to partially increase the foreclosure sale figure in calculating the loss offset, the Court also needs to add $225,693.39 to the gross loss figure before subtracting the offset.  Accordingly, the net restitution figure should, at the very least, not be reduced at all.

Balancing the pertinent considerations, the government recommends that the provisionally accepted restitution figure of $703,698.70 be retained as the final restitution figure.

        Respectfully submitted

        DEIRDRE M. DALY
        UNITED STATES ATTORNEY

        */s/ Henry K. Kopel*

        HENRY K. KOPEL
        ASSISTANT UNITED STATES ATTORNEY
        Fed. Bar No. ct24829
        157 Church Street, 23d Floor
        New Haven, CT   06510
        (203) 821-3700

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 25, 2016, I filed a copy of the foregoing pleading and proposed Order, and caused copies of same to be served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Copies of the foregoing have also been sent directly by E-mail to counsel for defendant Ryan Geddes, Richard C. Marquette, Esq., at rcmarquette@aol.com, and to U.S. Probation Officer Megan N. Chester, at megan_chester@ctp.uscourts.gov.

*Henry K. Kopel*

Assistant U.S. Attorney